# In the United States Court of Federal Claims

No. 02-1909C
Filed: April 14, 2008
**TO BE PUBLISHED[*]**

*************************************

| | | |
|---|---|---|
| HONEYWELL INTERNATIONAL INC., and HONEYWELL INTELLECTUAL PROPERTIES INC., | * | |
| Plaintiffs, | * | Doctrine of Double Patenting; |
| | * | Doctrine of Obviousness-Type Double Patenting; |
| v. | * | Invention Secrecy Act, 35 U.S.C. §§ 181-88; |
| THE UNITED STATES, | * | Jurisdiction; |
| Defendant, | * | Patent Act, 35 U.S.C. §§ 102(f), (g), 103, 112, 154(b); |
| | * | Secrecy Order; |
| LOCKHEED MARTIN CORP., | * | Standing; |
| | * | 37 C.F.R. §§ 1.78(b), 1.83, 5.1; |
| Defendant-Intervenor, | * | RCFC 12(b)(1). |
| L-3 COMMUNICATIONS CORP., | * | |
| Defendant-Intervenor. | * | |

*************************************

**Lawrence J. Gotts, Mark Koehn, and Elizabeth Miller Roesel**, Paul, Hastings, Janofsky & Walker, LLP, Washington, D.C., Counsel for Plaintiffs, Honeywell International Inc. and Honeywell Intellectual Properties Inc.

**Christopher L. Crumbley and Trevor M. Jefferson**, United States Department of Justice, Civil Division, Commercial Litigation Branch, Washington, D.C., Counsel for Defendant.

**Thomas J. Madden, Paul A. Debolt, and Justin E. Pierce**, Venable, LLP, Washington, D.C., Counsel for Defendant-Intervenor, Lockheed Martin Corp.

**John Harbin**, King & Spalding, Washington, D.C., Counsel for Defendant-Intervenor, L-3 Communications Corp.

---

[*] On April 3, 2008, a pre-publication draft of this Memorandum Opinion was provided under seal to all parties, with instructions to propose any redactions on or before COB April 14, 2008.

**MEMORANDUM OPINION REGARDING PLAINTIFFS' INVENTION SECRECY ACT CLAIMS.**

This is a case of first impression regarding the requirements of standing under the Invention Secrecy Act of 1951, 35 U.S.C. §§ 181-88 ("Invention Secrecy Act").[1]

## I. RELEVANT FACTS.[2]

On October 10, 1985, Richard L. Cohen filed a Form PTO-426, Serial No. 06/786,269 ("the '269 Application"), but assigned the invention described therein "concerning night vision goggles compatible with full color display" to Allied Corporation.[3] *See* DMX 36 at DE-1038; *see also id.* at DE-1039-56.[4] Prosecution commenced.

---

[1] Only three precedential decisions have been adjudicated under the Invention Secrecy Act. *See AT&T* v. *United States*, 231 Ct. Cl. 360, 362-70 (1982) (holding that statute of limitations under Section 183 accrues when a patent is issued, not the date of the Notice of Allowability, and remanding for administrative review on merits); *Lear Siegler, Inc.* v. *United States*, 225 Ct. Cl. 663, 668 (1981) (denying motion to dismiss Section 183 case, without prejudice); *Constant* v. *United States*, 223 Ct. Cl. 148, 155, 157 (1980) (holding that the Court of Claims has jurisdiction where a Secrecy Order substantially interferes with and defeats efforts to finance and market an invention, even though the patent at issue was not withheld because of the Order); *cf. Weiss* v. *United States*, 37 Fed. Appx. 518, 523-24 (Fed. Cir. 2002), *aff'g*,146 F.Supp.2d 113 (D. Mass. 2001) (non-precedential opinion) (affirming trial court's determination that no evidence was presented that any actual or potential customers, foreign or domestic, "ever attempted to license the invention or that anyone was interested in licensing the invention."); *see also Hornback* v. *United States*, 1998 U.S. App. LEXIS 29024, at *2-4 (Fed. Cir. Nov. 18, 1998) (per curium) (non-precedential opinion) (affirming dismissal of Section 183 case for failure to exhaust administrative remedies before filing Secrecy Act action in the United States Court of Federal Claims).

[2] The relevant facts recited herein were derived from evidence adduced at a trial held July 24-27, 2006 ("SA TR 1-1097"). A complete discussion about the patent at issue and technology are set forth in the following Memoranda Opinions and Orders that are incorporated herein: *Honeywell Int'l Inc.* v. *United States*, 66 Fed. Cl. 400 (2005) (*Markman* decision); *Honeywell Int'l Inc*. v. *United States*, 70 Fed. Cl. 424 (2006) (infringement decision).

[3] In 1985, Allied Corporation merged with Signal Companies and became Allied Signal Corporation. *See Honeywell*, 70 Fed. Cl. at 444. On December 16, 1999, Allied Signal Corporation merged with Honeywell International Inc. *Id*. As a result, Honeywell International Inc.'s subsidiary, Honeywell Intellectual Properties Inc., became the owner of the '269 Application. *Id*.

[4] On October 10, 1985, Mr. Cohen also filed Application Serial No. 06/786,268 ("the '268 Application") that issued on November 7, 2000 as Patent No. 6,142,637 ("the '637 patent"). *See* DMX 36 at DE-1531.

Pursuant to Section 181 of the Invention Secrecy Act and implementing regulation 37 C.F.R. § 5.1, the Office of the Commissioner of the Patents and Trademarks ("PTO") forwarded the '269 Application to each of the defense agencies. *See* SA TR at 27. On April 2, 1986, a Secrecy Order was issued at the request of the Department of the Navy. DMX 36. at DE-1119-20, 1154-55. Prosecution of the '269 Application continued and on November 13, 1987, the PTO issued a Notice of Allowability on claims 1-5 and prosecution was closed. *Id*. at DE-1168. The PTO, however, continued to withhold the '269 Application from issuance, because of "national interest" concerns. *Id*.

On September 7, 2000, the Secrecy Order was rescinded and "[n]ormal prosecution" of the '269 Application "continued." *Id.* at DE-1186. On November 15, 2000, claims 1-5 of the '269 Application, subject to the November 13, 1987 Notice of Allowability, were compared by the Patent Examiner to "a copending application [No. 09/632,760] and [a] formerly copending application not referenced in this file." *Id.* at DE-1190.[5] On further examination, the Patent Examiner decided to withdraw the November 13, 1987 Notice of Allowability and rejected claims 1-5 of the '269 Application, concluding that:

> 1. The non-statutory double patenting rejection, whether of the obvious-type or non-obvious type, is based on judicially created doctrine grounded in public policy (a policy reflected in the statute). . . .
>
> 2. Claims 1-5 are rejected under the judicially created doctrine of obviousness-type double patenting[6] as being unpatentable over claims of U.S. Patent No. 6,142,637 and provisionally over application Ser. No. 09/632,760.[7] Although the conflicting claims are not identical, they are not patentably distinct from each other because the same basic invention is unequivocally claimed among the dependant claims of both the patent and application.

---

[5] The Government argued at trial that after the Secrecy Order was rescinded, the Patent Examiner assigned to the '268 Application also was assigned to the '269 Application, which occasioned the rejection of the '269 Application claims, because "the PTO hadn't been informed that Honeywell had multiple patent applications pending at the same time with the same disclosure and very similar claims." SA TR at 94.

[6] "Double patenting" is a judicial doctrine that precludes a patentee from obtaining two patents that claim the same invention. *See In re Vogel*, 422 F.2d 438, 441 (C.C.P.A. 1970). Likewise, "obviousness-type" double patenting is a judicial doctrine that precludes the claims in one patent application that are obvious, over the claims of another patent application. *Id*. at 442.

[7] On August 4, 2000, Mr. Cohen also filed Application Serial No. 09/632,760 ("the '760 Application") as a continuation of U.S. Application Serial No. 06/786,268. *See* DMX 36 at DE-1543. On January 23, 2002, the specification in the '760 Application was allowed. *See* DMX 36 at DE-1522. On February 7, 2002, the drawing in the '760 Application was allowed. *Id*.

> 3. The present specification is objected for not referring to the related applications U.S. Patent No. 6,142,637 and provisionally over application Ser. No. 09/632,760 for identical subject matter.
>
> 4. Claims 1-5 of this application conflict with claims 8 and 9 of application serial number 09-632,760. 37 C.F.R. § 1.78(b) provides that when two or more applications filed by the same applicant contain conflicting claims, elimination of such claims from all but one application may be required in the absence of good and sufficient reason for their retention during pendency in more than one application. Applicant is required to either cancel the conflicting claims from all but one application or maintain a clear line of demarcation between the applications. See M.P.E.P. § 822.
>
> 5. Claims 1-5 are directed to the same invention as that of claims of commonly assigned U.S. Patent No. 6,142,637 and application Ser. No. 09/632,760. The issue of priority under 35 U.S.C. 102(g) and possibly 35 U.S.C. 102(f) of this single invention must be resolved.

DMX 36 at DE-1190 (citations omitted).

In response, on February 14, 2001, Honeywell submitted an amendment that properly identified the '637 patent and the '760 Application. *Id.* at DE-1476. The latter was characterized by Honeywell as a "continuation application" of the '637 patent. *Id.* In addition, Honeywell petitioned for reconsideration of the Patent Examiner's rejection of claims 1-5 of the '269 Application and/or allowance of "new method" claims 6-7 "directed to the method of operating an aircraft using night vision goggles in accordance with applicant's invention as described in the specification." *Id.* at DE-1476.

On March 20, 2001, the Patent Examiner again rejected claims 1-7 of the '269 Application:

> 1. The non-statutory double patenting rejection, whether the obvious-type or non-obvious-type, is based on a judicially created doctrine grounded in public policy (a policy reflected in the statute). . . .
>
> Effective January 1, 1994, a registered attorney or agent of record may sign a Terminal Disclaimer. A Terminal Disclaimer signed by the assignee must fully comply with 37 CFR 3.73(b).
>
> 2. Claims 1-7 are rejected under the judicially created doctrine of obviousness-type double patenting as being unpatentable over claims of U.S. Patent No. 6,142,637 and as to just claims 1-5 provisionally over application Ser. No. 09/632,760. Although the conflicting claims are not identical, they are not patentably distinct

from each other because the same basic invention is unequivocally claimed among the dependant claims of both the patent and application.

The present claims address the same invention disclosure of the patent and the application '760. Accordingly, the terms used in the claims are synonyms or are alternative expressions of the same apparatus that would have been obvious. It was noted that the "notch" filter of col. 4, line 46 of the patent is simply being claimed in '760 minus the term "notch." In this application the same sparse disclosure is addressed by the present claims that define more of the typical color projector filters rather than just one as in '760. This constitutes grounds for obviousness, as no different invention is even technically intended.

3. Claims 1-5 of this application conflict with claims 8-11 of application serial number 09/632,760. 37 C.F.R. § 1.78(b) provides that when two or more applications filed by the same applicant contain conflicting claims, elimination of such claims from all but one application may be required in the absence of good and sufficient reason for their retention during pendency in more than one application. Applicant is required to either cancel the conflicting claims from all but one application or maintain a clear line of demarcation between the applications. See M.P.E.P § 822.

5. Claims 1-7 are directed to the same invention as that of claims of commonly assigned U.S. Patent No. 6,142,637 and claims 1-5 to application Ser. No. 09/632,760. The issue of priority under 35 U.S.C. 102(g) and possibly 35 U.S.C. 102(f) of this single invention must be resolved.

Since the Patent and Trademark Office normally will not institute an interference between applications or a patent and an application of common ownership (see MPEP § 2302), the assignee is required [to] state which entity is the prior inventor of the conflicting subject matter. A terminal disclaimer has no effect in this situation since the basis for refusing more than one patent is priority of invention under 35 U.S.C. 102(f) or (g) and not an extension of monopoly.

Failure to comply with this requirement will result in a holding of abandonment of the application.

6. The following is a quotation of 35 U.S.C § 103 which forms the basis for all obviousness rejections set forth in this Office action:

> A patent may not be obtained though the invention is not identically disclosed or described as set forth in section 102 of this title, if the differences between the subject matter sought to be patented and the prior art are such that the subject matter as a whole would have been

> obvious at the time the invention was made to a person having ordinary skill in the art to which said subject matter pertains. Patentability shall not be negatived by the manner in which the invention was made.
>
> Subject matter developed by another person, which qualifies as prior art only under subsection (f) or (g) of section 102 of this title, shall not preclude patentability under this section where the subject matter and the claimed invention were, at the time the invention was made, owned by the same person or subject to an obligation of assignment to the same person.

> 7. Claim 1 is rejected under 35 U.S.C. § 103 as being unpatentable over newly cited Swift.
>
> Swift teaches the use of an effective notch filter by virtue of the operation of filter 9 in col. 3, lines 5-9, where "It may be such as to transmit all available light in the circumstances of use except for one narrow spectral band." This is for the purpose of keeping certain known interfering radiation from overpowering the night vision goggles worn by a pilot. To have further defined the chosen narrow spectral band as being the same band of wavelength known to be produced by a particular light source or sources that are inherently defined by pass filters themselves in a pilots environment, would have been obvious, since this would not change the invention by recognition of the offending source or sources.

*Id*. at DE-1495-96 (citations omitted).

On March 20, 2001, the PTO rescinded the November 13, 1987 Notice of Allowability regarding the '269 Application. *Id*. at DE-1496. Honeywell did not contest this action nor appeal to the Board of Patent Appeals and Interference. Instead, on September 19, 2001, Honeywell filed an Amended Transmittal Letter with the Patent Examiner adding Dr. Craig R. Scoughton as a co-inventor of the '269 Application. *Id*. at DE-1497-98. In addition, Honeywell cancelled claims 2-7 of the '269 Application, but amended claim 1 to add the following new paragraph 1(d):

> first and second polarizing filters, the first polarizing filter filtering light output from the local source of light and the second polarizing filter filtering the light input to the night vision aid.

*Id*. at DE-1501.

On February 27, 2002, the Patent Examiner rejected Honeywell's proposed amendment to claim 1 of the '269 Application, because:

> 1. Claims 1 is rejected under 35 U.S.C. § 112, first and second paragraphs, as the claimed invention is not described in such full, clear, concise and exact terms as to enable any person skilled in the art to make and use the same, and/or failing to particularly point out and distinctly claim the subject matter which applicant regards as the invention.
>
> No clear support for this embodiment with polarization and color discrimination together is described or shown in the drawings and specification. As in the copending applications, the principles are vague and the overlap among the three (a patent and two applications) need to be further explained.
>
> 2. The drawings are objected under 37 CFR 1.83 in that every feature claimed must be shown. Drawings are objected under 37 CFR 1.83 in that all box representations must include descriptive labeling.
>
> 3. The specification is objected under 35 U.S.C. § 112, first paragraph as above.
>
> 4. **THIS ACTION IS MADE FINAL.**

*Id*. at DE-1521 (emphasis in original).

Following an April 2, 2002 telephone interview with the Patent Examiner, on April 4, 2002, Honeywell filed an Amendment After Final Rejection, cancelling the existing '269 Application specification and substituting a specification from a previously allowed'760 Application. *Id*. at DE-1522. Honeywell then cancelled the existing '269 Application drawing and abstract and requested that the drawing and abstract of the '760 Application be substituted instead. *Id.* at DE-1523. The Patent Examiner also was instructed to "[c]ancel claim 1 and add new claims 8-10, where new claims 8-10 correspond to allowed claims in 15-17 in U.S. Application Serial No. 09/632,760." *Id.* at DE-1523; *see also id*. at DE-1524-25.[8] Honeywell also "submitt[ed] an express abandonment of application Serial No. 09/632,760, thereby obviating any issue of double patenting." *Id*. at DE-1525.

On June 4, 2002, the Patent Examiner rejected Honeywell's proposed April 4, 2004 amendments, because: "The transfer of the drawings and specifications from 09/632,760 is technically infeasible, but the same matter would be entered if formally submitted in this application along with the claims." *Id.* at DE-1528.

[8] The Remark Section of the April 4, 2002 Amendment After Final Rejection references in several places "Application Serial No. 09/632,770," which the court assumes was a typographical error by Honeywell that should read "Application Serial No. 09/632,760."

Following another telephone interview with the Patent Examiner, on June 24, 2002, Honeywell filed an Amendment After Final Rejection, cancelling the existing specification in the '269 Application and "formally submitt[ing]" the specification, drawing, and abstract of the '760 Application, together with the text of claims 8-10 of the '760 Application, but re-numbering the claims as 1-3. *Id.* at DE-1671-75. Honeywell also represented that: "The '760 Application has now been abandoned, thereby obviating any issues of double patenting. Applicants are also cancelling the rejected claim 1 in this application, so that after entry of this Amendment *the only claims being presented in this* ['269] *application are the claims allowed in the '760 Application*." *Id.* at DE-1674 (emphasis added).

On July 1, 2002, the Patent Examiner issued a Notice of Allowability regarding the '269 Application. *Id.* at DE-1729.

On October 22, 2002, United States Patent No. 6,467,914 ("the '914 patent") was issued together with Determination of Patent Term Extension or Adjustment, under 35 U.S.C. § 154(b). *Id.* at DE-1676-77, 1682-88.

## II. PROCEDURAL HISTORY.

On December 18, 2002, Honeywell filed a Complaint in the United States Court of Federal Claims asserting three counts against the Government. *See* Compl. Count I alleged a claim for "Recovery For Damage Caused By Secrecy Order (Issued With Respect To The '268 Patent Application) and For Government Use During Pendency of Secrecy Order and Prior to Issuance of the '637 Patent." Compl. at 12.

On May 31, 2005, Honeywell filed an Amended Complaint, wherein Count 1, concerning the Invention Secrecy Act, alleged that: "From April 2, 1986 through September 7, 2000, Honeywell's *'269 patent application which matured into the '914 patent*, was the subject of a Secrecy Order issued by the USPTO pursuant to 35 U.S.C. § 181." *See* Amend. Compl. ¶ 20 (emphasis added). Prior allegations regarding the '268 Application were deleted, without explanation.

On May 31, 2006, Honeywell filed a Motion and Brief In Support of a Motion for Partial Summary Judgment Of Liability Under Invention Secrecy Act ("Pl. SA Br."), together with Appendix Volumes I and II of supporting documents. On June 22, 2006, the Government filed a Cross-Motion for Partial Summary Judgment on Count One ("Gov't SA Cross Mot."), together with a separate Appendix.

On July 6, 2006, Honeywell filed a Reply In Support of the May 31, 2006 Motion For Partial Summary Judgment and Opposition to the Government's Cross Motion ("Pl. SA Reply/Opp."), together with Additional Proposed Findings of Uncontroverted Fact. On July 18, 2006, the Government filed a Reply In Support of the Government's June 22, 2006 Cross Motion ("Gov't SA Reply") and a Supplemental Appendix. On July 24, 2006, Honeywell filed a Motion for Leave to

File a Supplemental Brief in Opposition to the Government's June 22, 2006 Cross-Motion ("Pl. SA Supp. Brief").

On July 24-27, 2006, the court convened a trial on Honeywell's claims for liability under the Invention Secrecy Act. *See* SA TR 1-1097.[9] With the consent of the parties, separate proceedings were held regarding the Government and Defendant-Intervenors' affirmative defenses and Plaintiffs' damage claims.

On November 13-15, 2006, a trial was held on defenses asserted by the Government and/or Defendant-Intervenors. On December 11-15, 2006 and February 27-March 2, 2007, the court held a trial on potential damages.

On April 25, 2007, Honeywell filed a Post-Trial Brief Regarding Liability Under the Invention Secrecy Act ("Pl. PT SA Br."). On that same date, the Government filed a Post-Trial Memorandum on Count I (Invention Secrecy Act) ("Gov't PT SA Mem.").[10]

On June 8, 2007, Honeywell filed a Post Trial Reply ("Pl PT Reply") and the Government filed a Post Trial Reply ("Gov't PT Reply").

The parties agreed that the court should issue the Memorandum Opinion and Final Judgment regarding Honeywell's Just Compensation claims under the Invention Secrecy Act, together with

---

[9] Honeywell's fact witnesses included: John Donofrio, the former Vice President of Intellectual Property for Allied-Signal Technologies, Inc., the licensing entity for Allied-Signal Corp. (1996-2000) and General Counsel for Honeywell Aerospace (2000-2005) (SA TR 116-218); David Russell McClure, previously employed by the Navy as a civilian electrical engineer at Naval Air System Command and currently serving as the Deputy Program Manager at Wright Patterson Air Force Base (SA TR 66, 200-478); and Ferdinand Reetz III, an Engineer at Naval Air Warfare Center, initially assigned to obtain "achievement of night-vision compatibility," and currently serving as the Chief Engineer for the Navy's C-130 Program at Patuxent River (SA TR 66; *see also* SA TR 490-679). In addition, Honeywell proffered the following documents: DE 218, 303, 319, 322, 323, 324; PTX 500-601 (Reetz Deposition); PTX 602 (Bryner Deposition); PTX 604 (Byrd Deposition); PTX 605; PTX 606; and PTX 700.

The Government's fact witnesses included: David Russell McClure, Ferdinand Reetz, and Charles Byrd, Senior Control Engineer at the Aeronautical Systems Center, Wright Patterson Air Force Base (SA TR 66, 917-1043 [936-37, 956-93, 1011-25 under seal]); and Ms. Laurie Bryner, formerly Electronics Engineer, Electro Optics Branch, Patuxent Research (located in Warminister, Pennsylvania) and currently Assistant Program Manager for the Navy KC-130J Tanker Aircraft Program (SA TR 66, 1043-91). In addition, the Government proffered DE-300-25, in addition to those previously admitted in the *Markman* proceeding.

[10] Neither of the Defendant-Intervenors submitted separate briefs in the Invention Secrecy Act proceedings.

issuance of the Memorandum Opinion and Final Judgment on the Government and Intervenor-Defendants' Defenses, that is filed herewith.

## III. DISCUSSION.

### A. Jurisdiction.

The Invention Secrecy Act governs two types of patent applications: those in which the Government has a property interest in the invention; and those where the Commissioner of Patents and Trademarks ("PTO Commissioner") determines that the publication or disclosure of an application may be "detrimental to the national security." 35 U.S.C. § 181. In the latter situation, the PTO Commissioner refers certain patent applications to the Chief Officer of each of the defense agencies. *Id*. The defense agencies then determine if the PTO Commissioner should issue a Secrecy Order to protect national security. *Id.* The term of a Secrecy Order is one year. *Id.* Thereafter, the PTO Commissioner may renew a Secrecy Order on an annual basis, if the relevant defense agency determines that the "national interest" continues to require that the patent application not issue. *Id.*[11]

To compensate the patent owner for lost revenue during the pendency of a Secrecy Order, Section 183 of the Invention Secrecy Act provides that:

> [t]he owner of any patent issued upon an application that was subject to a secrecy order issued[,] pursuant to section 181 of this title . . . shall have the right, *after issuance of such patent*, to bring suit in the United States Court of Federal Claims for just compensation for the damage caused by reason of the order of secrecy and/or use by the Government of the *invention* resulting from his disclosure.

35 U.S.C. § 183 (emphasis added).[12]

---

[11] A Secrecy Order may be extended when the United States is at war or when the President declares a national emergency. *See* 35 U.S.C. § 181. The Commissioner may rescind a Secrecy Order, if notified by the head of the initiating agency that "the publication or disclosure of the invention is no longer detrimental to the national security." *Id.*

[12] The United States Court of Appeals for the Federal Circuit has acknowledged that: "Section 183 . . . contemplates two causes of action: one for damage caused by the order of secrecy ('damages claim'); and another for use by the [G]overnment resulting from the applicant's disclosure ('use claim')." *Weiss*, 37 Fed. Appx. at 521, *aff'g*, 146 F.Supp.2d 113 (D. Mass. 2001) (non-precedential opinion).

In this case, Honeywell[13] requests a judgment from the Government under both causes of action. *See* Amend. Compl. ¶ 22; *see also* SA TR at 14-15.

**C. Standing.**

In this case, the threshold jurisdictional issue is whether the '914 patent issued "*upon an application* that was subject to a secrecy order[.]" 35 U.S.C. § 183 (emphasis added). When "upon" is used as a preposition, as in Section 183, it means "on." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY (2002) at 2517; *see also id.* at 1574 ("on:" "used as a function word to indicate contiguity or dependence.").

The following chart, prepared by the court, attempts to show the "evolution of the '269 Application," previously discussed herein, characterized as "Honeywell's '269 application which *matured into* the '914 patent." Amend. Compl. ¶ 20 (emphasis added).

[13] Section 183 of the Invention Secrecy Act applies to "[a]n applicant, [as well as] . . . successors, assigns, or legal representatives whose patent is withheld[.]" 35 U.S.C. § 183.

**Evolution of the '269 Application**



In fact, as of June 24, 2002, the specification, drawing, abstract, and all claims subject to the Secrecy Order were stripped by Honeywell from the '269 Application, and the specification, drawing, and three claims from the '760 Application were exported into the '269 Application that bore only the Serial Number of the '269 Application, with none of the prior substantive content. *Compare* DMX 36 at DE-1674 *with* DMX 36 at DE-1676-77.

As Honeywell's counsel explained, at trial:

> When they lifted the secrecy order, the [G]overnment then issued, rather than issuing the patent, issued a new ground of rejection, in other words, they said the claims that were pending, well, we thought about it, you know, and although we told you something else 14 years ago, we think that there is a rejection.
>
> Now so Honeywell is in this funny position with the claims that are in this case. It can now, you know, spend a bunch more time and let those claims – you know, fight those claims, but it also had a lot of claims in another case. And you know, we take the money and run, it basically took the allowed claims and it got issued.

SA TR 54; *see also* SA TR 60 ("Actually we're not aware of any reported case where we have seen where the claims were changed, either, quite frankly.").

In the court's judgment, the '914 patent did not issue "on the '269 Application," since the claims in the '269 Application, subject to the April 2, 1986 Secrecy Order, were completely different than the claims in the '914 patent that issued on October 22, 2002, as the following chart further shows:

| **Claims in the '269 Application<br>(As of April 2, 1986 Imposition of the Secrecy Order)** | **Claims in the '914 patent<br>(Issued on October 22, 2002)** |
|---|---|
| 1. In combination with a night vision aid and a local source of light, wherein the local source of light includes a plurality of distinct monochromatic color generators and local source light is blocked from interfering with the night vision aid, a display system characterized by:<br>a) a bandpass optical filter arranged to block light from one said color generators except at preferred range of frequencies;<br>b) a high pass optical filter arranged to block light from at least one other of said generators, the high pass filter blocking light at the preferred range of frequencies; and<br>c) an optical filter associated with the night vision aid and positioned with respect to the night vision aid so as to filter light entering a light input of the night vision aid, said optical filter associated with the night vision aid having a characteristic of blocking light and said preferred range of frequencies. | 1. A display system for use in association with a light amplifying passive night vision aid and a local color display including a local source of light, comprising:<br>(a) a first optical filter that filters light from the local color display, wherein said first optical filter is a notch filter that passes light comprising predetermined color bands including a predetermined red color band and that substantially blocks light associated with color bands other than said predetermined color bands; and<br>(b) a second optical filter that filters light at the night vision aid, wherein said second optical filter substantially blocks light of at least said predetermined red color band. |

| **Claims in the '269 Application (As of April 2, 1986 Imposition of the Secrecy Order)** | **Claims in the '914 patent (Issued on October 22, 2002)** |
|---|---|
| 2. Display system as described in claim 1, further characterized by: first and second polarizing filters, the first polarizing filter filtering light output from the local source of light and the second polarizing filter filtering the light input to the night vision aid. | 2. A display system for use in association with a light amplifying passive night vision aid and a local color display including a local source of light having blue, red, and green color bands, comprising: (a) a plurality of filters at the local color display including: (1) a first filter for filtering the blue color band of the local source of light; (2) a second filter for filtering the green color band of the local source of light; and (3) a third filter for filtering the red color band of the local source of light and passing a narrowband of the red color band; and (b) a fourth filter which filters light at the night vision aid, said fourth filter cooperating with said plurality of filters to substantially block at least said narrowband of the red color band from being admitted to the night vision aid. |
| 3. Display system as described in claim 2, further characterized by: the first and second filters being circular polarizers. | 3. The display system of claim 2 wherein said narrowband of the red color band is substantially five to twenty nanometers wide. |
| 4. Display system as described in claim 1, further characterized by: the local display being a multiple tube color display and the color generators being monochromatic cathode ray tubes of distinct colors used in the multiple tube color display. | |
| 5. Display system as described in claim 4, further characterized by: first and second polarizing filters, the first polarizing filter filtering light output from the local source of light and the second polarizing filter filtering the light input to the night vision aid; and the first and second filters being circular polarizers. | |

DMX 36 at DE-1049 DMX 36 at DE-1688

The most significant differences between the claims in the '269 Application and the claims in the '914 patent are discussed in brief. In claim 1 of the '269 Application, the "local source of light" must include "a plurality of distinct monochromatic color generators." *See* DMX 36 at DE-1674. In contrast, in claim 1 of the '914 patent, the "local source of light" does not contain that requirement, but instead requires two optical filters. *See* DMX 36 at DE-1688; *see also* SA TR at 90-91. Claim 2 of the '269 Application requires that the display system "utilize polarizing filters." *See* DMX 36 at DE-1674. In contrast, claim 2 of the '914 patent, however, only requires a "local color display" to use a "plurality of filters" to filter the blue, green, and red color bands. *See* DMX 36 at DE-1688; *see also* SA TR at 91. Claim 2 of the '914 patent also requires a "plurality of filters at the local color display" to filter the blue color band, green color bad" *and* the "red color band . . . *and* passing a narrow band of the red color band[.]" DMX 36 at DE-1688 (emphasis added). No specific color bands were disclosed as being filtered in the '269 Application, nor

"passing" a narrow band of the red color band. *See* DMX 36 at DE-1049.[14] Claim 3 of the '269 Application describes a display system utilizing "first and second filters being circular polarizers." DMX 36 at DE-1674. Claim 3 of the '914 patent, however, does not address the type of filters, but requires a display system "wherein said narrowband of the red color band is substantially five to twenty nanometers wide." DMX 36 at 1688; *see also* SA TR 91.

Honeywell's '914 patent did not issue "upon" or "on" the '269 Application as there is no contiguous relationship or dependence between the two. Although the legislative history of the Invention Secrecy Act does not address the requirements of standing,[15] it is inconceivable that Congress intended to allow an inventor to recover compensation from the Government for claims that were never subject to a Secrecy Order, nor bore any substantive relationship thereto. *See Johnson & Johnston Assoc. Inc.* v. *R.E. Service Co., Inc.*, 285 F.3d 1046, 1052 (Fed. Cir. 2002) (holding that the claims define the scope of the invention and the meets and bounds of legal protection); *see also Campion* v. *Merit Sys. Prot. Bd.*, 326 F.3d 1210, 1214 (Fed. Cir. 2003) ("[O]nly the most extraordinary showing of contrary intentions from the [legislative history] would justify a limitation on the 'plain meaning' of the statutory language."). Therefore, Honeywell cannot establish the second element of Article III standing to assert a claim for just compensation under the Invention Secrecy Act, *i.e.*, "causation – a fairly traceable connection between the plaintiff's injury and the complained-of conduct of the defendant." *Steel Co.* v. *Citizens for a Better Environment*, 523 U.S. 83, 103 (1998) (internal citations omitted); *see also id.* at 95 ("Every federal . . . court has a special obligation to 'satisfy itself . . . of its own jurisdiction, . . . even though the parties are prepared to concede it.'") (internal citations omitted). Assuming*, arguendo*, that Honeywell has standing, the court has held that claim 2 of the '914 patent is obvious, does not meet the written description requirement of the second paragraph of Section 112 of the Patent Act, and is barred from recovering damages from the Government under the "First Sale" Doctrine. *See Honeywell Int'l Inc.* v. *United States*, __ Fed. Cl. __ (April __, 2008) (defenses) (filed herewith).

---

[14] This analysis parallels the court's determination that Honeywell failed to satisfy the written description requirement of Section 112 of the Patent Act. *See Honeywell Int'l Inc.* v. *United States*, __ Fed. Cl. __ (April __, 2008) (regarding defenses).

[15] *See Farrand Optical* v. *United States*, 317 F.2d 875, 880 (2d Cir. 1963) (observing that "[t]he legislative history of the [Invention Secrecy] Act is so meager that it casts little light on the true intent of Congress.").

## IV. CONCLUSION.

The parties will advise the court on or before May 1, 2008 whether further proceedings are necessary, before the court enters a judgment that may be appealed to the United States Court of Appeals for the Federal Circuit.

**IT IS SO ORDERED**.

**s/ Susan G. Braden**
**SUSAN G. BRADEN**
**Judge**